THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| ANTHONY L. NICHOLS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:14-cv-06102-NKL |
| | ) | |
| RYAN J. MORRIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiffs Anthony Nichols and Chris DiVirgilio filed this lawsuit against Defendants Ryan Morris and Tripwire Operations Group arising out of agreements Morris made with both Nichols and DiVirgilio to purchase their interest in Tripwire. (Counts I-IV). Plaintiffs also seek an accounting of all the financial activities of Tripwire from 2010 through the present and allege that Morris and Tripwire have violated Tripwire's Operating Agreement which requires the company to provide annual financial statements to its members (Counts V-VI).

Before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion to Transfer Venue. [Doc. 8]. For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part. All claims against Morris are dismissed for lack of personal jurisdiction. The claims against Tripwire in Counts I-IV are dismissed for failure to state a claim. Defendants' Motion to Transfer Venue is denied.

**I.     Background**

1

Plaintiff Anthony Nichols resides in Gower, Missouri. Plaintiff Chris DiVirgilio resides in Voorhes, New Jersey. Defendant Ryan Morris resides in Biglersville, Pennsylvania. Defendant Tripwire is a limited liability company formed under the laws of Pennsylvania, and its registered office is located at Morris' residence in Pennsylvania. Tripwire Operations Group is a supply and operations company that specializes in products such as explosives and training materials used by persons performing law enforcement and other safety functions. [Doc. 1-2, p. 3].

Tripwire is governed by an Operating Agreement signed in April 2010 by Morris, Plaintiff Chris DiVirgilio, and non-party, David Ford, who all owned a portion of the company. *Id.* The Operating Agreement was amended in September 2010 to add Plaintiff Anthony Nichols as a member of the company. [Doc. 1-3].

Since 2010, when Nichols joined the company, Morris, as manager of Tripwire, advertised Nichols' home in Gower, Missouri as a magazine storage site, even though Tripwire did not have a federal explosive license to store or operate a storage facility in Missouri. *See e.g.*, [Doc. 16-1, p. 49]. On one occasion, in June 2013, Morris arranged for a former customer to drop off explosives at Nichols' home. [Doc. 16-1, pp. 71-72]. Tripwire was able to make this arrangement without a license because Nichols owned a separate company, ARMR, LLC, which held a federal explosive license in Missouri. Morris met the customer at Nichols' home to pick up the explosives and at the same time picked up products Tripwire purchased from Nichols' separate company, ARMR, LLC. Other than the drop-off described above, Tripwire has never used Nichols' home in Missouri to store explosives or to operate a magazine storage site.

2

Morris also made occasional trips to Missouri. In June 2011, Morris and DiVirgilio travelled to Nichols' home in a vehicle containing explosives for delivery. Morris and DiVirgilio spent the night at Nichols' home, and DiVirgilio left the next day to deliver the explosives to Texas. Morris stayed another night with Nichols and discussed future storage of explosives at Nichols' home. In October 2011, Morris flew to Kansas City, Missouri, was picked up by Nichols, and the two of them drove a truck with explosives to Texas, New Mexico, Arizona, and Nevada. In spring 2012, Morris drove through Missouri to establish a credit line at a bank in Kansas City, Kansas.

Morris also advertised Nichols' home as a place customers could pick up goods. In February 2012, an Iowa Sheriff's Department picked up an order of products produced by Tripwire in Missouri at Nichols' home. The customer was not a Missouri resident, and Morris negotiated and completed the transaction on Tripwire's behalf from Pennsylvania. Morris met the customer at Nichols' home in Missouri while driving through Missouri to handle business in another state.

In January 2014, Morris and Nichols entered into a Limited Liability Membership Interest Purchase Agreement (Nichols Agreement) whereby Morris agreed to buy Nichols' membership units in Tripwire for $360,000. [Doc. 1-4]. The Nichols Agreement was signed first by Nichols on January 28, 2014, in Missouri, and forwarded via email to Morris in Pennsylvania. [Doc. 27-1, p. 3]. Morris then signed the Nichols Agreement in Pennsylvania and sent it back to Nichols on January 31, 2014. *Id.* at 8. Also in January 2014, Morris and DiVirgilio entered into a Limited Liability Membership Interest Purchase Agreement (DiVirgilio Agreement) whereby Morris agreed to purchase

3

DiVirgilio's membership units in Tripwire for $120,000. [Doc. 1-5]. After both Nichols and DiVirgilio indicated to Morris that they were prepared to fulfill all conditions required of them by their respective purchase agreements, Morris refused to purchase the membership units, and Nichols and DiVirgilio now seek damages for Morris' breach of the purchase agreements (Counts I, III), or, alternatively, specific performance of the purchase agreements (Counts II, IV).

In Count V, Nichols and DiVirgilio allege that Morris, as manager of Tripwire, and Tripwire have failed and refused to issue all distributions to which DiVirgilio and Nichols were entitled since 2010 pursuant to § 4.06 of the Operating Agreement. As a result, Nichols and DiVirgilio seek an accounting of all the financial activities of Tripwire since 2010 and all distributions that should have been made to them since 2010. In Count VI, Nichols and DiVirgilio seek damages for breach of contract because Morris and Tripwire did not furnish them with annual financial statements as required by § 9.02 of the Operating Agreement.

Defendants argue dismissal against Morris is appropriate because the Court lacks personal jurisdiction over him. Defendants also argue that the claims against Tripwire should be dismissed because Plaintiffs have failed to allege that Tripwire owed any contractual duty to Nichols or DiVirgilio under the purchase agreements (Counts I-IV) or that Tripwire committed any wrongdoing under the Operating Agreement (Counts V-VI). Defendants also argue that should this Court decline to dismiss this case entirely, the case should be transferred to the Middle District of Pennsylvania.

II. **Discussion**

### A. Personal Jurisdiction

Defendants argue that Plaintiffs' claims against Morris must be dismissed because Morris' contact with Missouri is insufficient for the Court to exercise personal jurisdiction over him. As the party asserting that personal jurisdiction exists, Plaintiffs have the burden of proving facts sufficient to make a prima facie showing of jurisdiction. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008).

Plaintiffs argue that Morris has sufficient contacts to establish either general or specific personal jurisdiction. Specific personal jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). It depends on an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). Specific personal jurisdiction exists only to the extent permitted by Missouri's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* Missouri's long-arm statute authorizes personal jurisdiction over defendants who, among other actions, transact business, make a contract, or commit a tort within the state. Mo. Rev. Stat. § 506.500; *Viasystems*, 646 F.3d at 593.

General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Viasystems*, 646 F.3d at 593. General jurisdiction exists where a defendant has contacts

5

with the forum state that are so "continuous and systematic" as to render them at home in the forum state. *Goodyear*, 131 S.Ct. at 2851. The defendant's continuous operations must be "so substantial and of such nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *See id.* at 2853.

Even if a defendant's contacts satisfy the requirements of specific or general personal jurisdiction, jurisdiction only exists if it comports with requirements of the Due Process Clause. *Viasystems*, 646 F.3d at 594; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980). Due process analysis requires a determination of whether Morris has sufficient "minimum contacts" with Missouri such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Viasystems*, 646 F.3d at 594; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there." *Viasystems*, 646 F.3d at 594 (internal citations and quotations omitted).

This Court cannot exercise specific personal jurisdiction over Morris because none of the actions alleged in the Complaint arise from or are related to Morris' actions within Missouri. The six counts in Plaintiffs' Complaint relate to Morris' breach of the Nichols Agreement and the DiVirgilio Agreement and Morris' and Tripwire's breach of the Operating Agreement. None of these agreements was executed in Missouri. Plaintiffs argue that specific jurisdiction is appropriate under Missouri's long-arm statute because the Nichols Agreement was signed last by Nichols in Missouri, thereby giving rise to a

6

binding agreement formed in Missouri under RSMo. § 506.500(2). [Doc. 16-1, p. 4, ¶ 17]. However, Defendants provided evidence that Nichols was actually the first signatory on the Nichols Agreement and that Morris signed second in Pennsylvania. [Doc. 27-1, pp. 3-8]. Therefore, the Nichols Agreement was finalized in Pennsylvania, not Missouri. [1] *See U.S. Durum Milling, Inc. v. Frescala Foods, Inc.*, 785 F.Supp. 1369, 1371-72 (E.D. Mo. 1992) ("A contract is made in Missouri if the final act which gives rise to a binding agreement occurs within this state.").

Plaintiffs next argue that "[s]ince Nichols is a Missouri resident and holds his membership interests in Tripwire as personal property in Missouri, Nichols has sustained damages in Missouri." [Doc. 16, p. 9]. However, Plaintiffs cite to no legal authority explaining how this fact establishes specific jurisdiction. Plaintiffs also assert that specific jurisdiction exists because "Morris is a business partner with a Missouri resident, did business with a Missouri resident, operated a business location out of a Missouri's resident's home, [and] conducted business out of Missouri." [Doc. 16, p. 10]. But Plaintiffs do not explain how any of this activity gave rise to the specific injuries alleged in this lawsuit. A defendant's "continuous activity of some sorts within a state is not enough to support the demand that the [defendant] be amenable to suits unrelated to that activity." *See Goodyear*, 131 S.Ct. at 2856.

---

[1] Although Plaintiffs allege in their Complaint that the First Amendment to the Operating Agreement of Tripwire was also executed in Missouri, [Doc. 1, ¶ 11], that allegation was expressly denied by Defendants in their Suggestions in Support of their Motion to Dismiss, [Doc. 9, p. 8], and Plaintiffs did not subsequently provide any documentation to support that allegation. The Court will not consider that allegation as true for purposes of determining personal jurisdiction. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) ("Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts. The Plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.").

7

Likewise, this Court cannot exercise general personal jurisdiction over Morris, because although Morris has had some contact with Missouri, it is not the kind of "systematic and continuous" contact that renders Morris at home in Missouri. Viewing the facts in the light most favorable to Plaintiffs, Morris, as manager of Tripwire and on behalf of Tripwire, advertised Nichols' Missouri home as an explosives depository and storage site and as a place customers could pick up goods, but only ever arranged one drop-off and one pick-up. Morris picked up goods Tripwire purchased from Nichols in Missouri one time, stayed two nights in Missouri on his way to deliver goods to other states, drove through Missouri to establish a credit line at a Kansas bank, and flew or drove into Missouri on a couple occasions where he would then drive trucks to other states for delivery on behalf of Tripwire. Even attributing these actions to Morris personally and not to Tripwire, they are not substantial, systematic, or continuous.

Further still, even assuming Plaintiffs established a prima facie case of specific or general jurisdiction, Plaintiffs cannot satisfy the Due Process Clause, which requires sufficient "minimum contacts" with Missouri. *Viasystems*, 646 F.3d at 594. In other words, Morris has not "purposefully availed [himself] of the benefits and protections of [Missouri] to such a degree that [he] should reasonably anticipate being haled into court" here. *Id.* To determine whether a defendant's contacts with a forum state support personal jurisdiction under the Due Process Clause, the Eighth Circuit has established a five-factor test. Courts should determine "(1) the nature and quality of the contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and

(5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The first three factors are of primary importance. *Id.* First, the nature of Morris' contacts can largely be described as Morris stopping in Missouri on the way to transact business in other states. Second, those contacts with Missouri have been sparse: twice in 2011, once in 2012, and once in 2013, not counting Morris' advertising endeavors on behalf of Tripwire. Third, Morris' contacts with Missouri do not relate to the allegations in this lawsuit, which are focused on Morris' and Tripwire's breach of various contracts formed outside of Missouri and which do not relate in any way to the delivery of explosives to other states or to the storage of explosives in Missouri. Fourth, while Missouri has an interest in providing a forum state for its residents, Morris did not execute the contracts at issue in this lawsuit in Missouri and he has only occasionally been in Missouri. Finally, because Morris lives in Pennsylvania and Nichols resides in Missouri, convenience of the Parties is a neutral factor. Considering the factors in *Burlington* and giving particular weight to the first three factors, the Court finds that Morris' contacts with Missouri are not sufficient "minimum contacts" to satisfy the Due Process Clause.

Morris has insufficient contacts with Missouri to satisfy the requirements of specific or general personal jurisdiction or the Due Process Clause. Therefore, Plaintiffs' claims against Morris are dismissed without prejudice for lack of personal jurisdiction.

### B. Failure to State a Claim

Defendants next argue that the claims against Tripwire should be dismissed because Plaintiffs have failed to state a claim against it. First, Defendants argue that

9

Counts I-IV should be dismissed against Tripwire because Plaintiffs have failed to allege that Tripwire had a duty or breached a duty under either the Nichols Agreement or DiVirgilio Agreement. Counts I-IV allege that Morris entered into agreements with Nichols and DiVirgilio for the purchase of their membership units in Tripwire, that "Morris has failed and refused to meet his duties and obligations pursuant to" the agreements, [Doc. 1, ¶¶ 24, 39], and that they have been damaged by "Morris' breach," [Doc. 1, ¶¶ 25-26, 39-40]. Counts I and III seek damages for Morris' breach of the purchase agreements. Counts II and IV seek an order of specific performance. While Plaintiffs include Tripwire in the demand clause for each of these counts, there are no factual allegations within Counts I-IV to suggest that Tripwire was part of the purchase agreements or owed any duty to Plaintiffs under the purchase agreements. The purchase agreements specifically state that the agreement "is made by and between Ryan J. Morris ("Buyer") and Anthony L. Nichols [or Chris M. DiVirgilio] ("Seller") . . . ." [Docs. 1-4, 1-5]. Plaintiffs argue that Tripwire should be liable for the breach of the purchase agreements because "Morris is in complete control of everything to do with Tripwire" and therefore, "an act of Morris is an act of Tripwire." [Doc. 16, p. 13]. However, Plaintiffs do not cite to any legal authority supporting their claim that a company is liable for a private agreement by its manager or executive merely because the executive also has sole control of the company. Tripwire is no more responsible for the purchase agreements between Morris and Plaintiffs than it would be for a contract between Morris and a cable company for television in his home. Accordingly, the claims against Tripwire in Counts I-IV are dismissed.

Defendants also argue that the claims against Tripwire in Counts V and VI should be dismissed because they "actually appear to allege misconduct and breaches of fiduciary duty related to Morris' management of Tripwire, rather than some wrong committed by the company itself." [Doc. 9, p. 10] (emphasis in original). Count V alleges that "Morris, as the manager of Tripwire, and Tripwire have failed and refused to issue all distributions to DiVirgilio and Nichols to which they have been entitled since 2010." [Doc. 1, ¶ 49]. Contrary to Defendants' interpretation of the Complaint, Plaintiffs clearly allege that Morris and Tripwire have failed to issue distributions. The Operating Agreement attached to the Complaint also supports Plaintiffs' claim that Tripwire had responsibilities related to distributions.

> **4.06 Distributions**.
> **(a) General Rule**. Except as otherwise provided herein, the Manager in its sole discretion may authorize the Company to make distributions to the Class A Members.
> . . .
> **(b) Minimum Distribution**. With respect to any taxable year of the Company in which Class A Members are allocated taxable income for Federal income tax purposes . . . *the Company shall attempt to distribute to the Class A Members* . . . no less than the amount determined by multiplying the Company's taxable income . . . by the highest composite Federal, state and local income tax rate applicable to any Class A Member.
> . . .

[Doc. 1-2, p. 6] (emphasis added). Just because Morris, as the manager, was the sole person who could issue these distributions does not mean that Tripwire is not responsible for the failure to issue distributions which it was required to make under the terms of the Operating Agreement.

11

Count VI alleges that "[p]ursuant to the Operating Agreement, Tripwire was obligated to furnish to Nichols and DiVirgilio annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year." [Doc. 1, ¶ 55]. The Complaint specifically alleges fault by Tripwire, which like above, is supported by the Operating Agreement which states:

> **9.01 Maintenance of Books**.
> **(a) Financial Records**. The Company shall keep books and records of accounts . . . .
> . . .
> **9.02 Reports**. The Company shall furnish its Class A Members annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year. . . . The financial statements shall be mailed by the Company to each of the Class A Members within 120 days after the close of each fiscal year. . . .

[Doc. 1-2, pp. 17-18]. Defendants point to § 5.01 of the Operating Agreement, which states that "[t]he management of the business and affairs of the Company shall be the sole and complete responsibility of the Manager." *Id.* at p. 8. Regardless of whom the company places the responsibility on, Tripwire is still liable to its members for failing to execute functions expressly promised by it in the Operating Agreement.

Plaintiffs have not pleaded sufficient factual content to state a claim against Tripwire in Counts I-IV but have done so in Counts V and VI. Therefore, Defendants' Motion to Dismiss the claims against Tripwire is granted in part. The claims against Tripwire in Counts I-IV are dismissed. The claims against Tripwire in Counts V and VI remain.

### C. Transfer Venue

12

Case 5:14-cv-06102-NKL   Document 30   Filed 02/26/15   Page 12 of 15

Defendants argue that should the Court decline to dismiss the Complaint in its entirety, the Court should transfer this action to the Middle District of Pennsylvania. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In general, courts give considerable deference to a plaintiff's choice of forum, particularly when the plaintiff lives in that forum. *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010); *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 930 (W.D. Mo. 1985). The party seeking transfer must make a clear showing that the balance of interests weighs strongly in favor of the proposed transfer. *Houk*, 613 F.Supp. at 927. While the Eighth Circuit has declined to offer an exhaustive list of specific factors to consider, *In re Apple*, 602 F.3d at 912, courts may consider

> a myriad of factors, including the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively.

*Houk*, 613 F. Supp. at 927.

As to the convenience to the Parties and witnesses, both Morris (on behalf of Tripwire) and DiVirgilio will have to travel to Missouri if they desire in-person depositions and for trial-related proceedings, but DiVirgilio has consented to bringing this lawsuit in Missouri and presumably took travel to Missouri into consideration when he agreed to do so. Because the Parties agree that they will likely be the only witnesses,

13

no other witnesses other than the Parties themselves will have to travel to Missouri. Thus, the availability of judicial processes to compel witnesses to appear is not a significant factor. While the Parties also agree that Pennsylvania law governs this lawsuit, Plaintiffs claims are common law breach of contract and accounting claims and are not so unique to Pennsylvania law that they will require a specialized understanding of Pennsylvania law. Further, the remaining claims in this lawsuit focus on three contracts and an accounting of Tripwire's financial status, so access to sources of proof like the Operating Agreement (already available) and financial documents should be easily produced in electronic format. As to the delay a transfer would cause, the Parties agree that due to the infancy of this litigation, a transfer would not cause material delay.

Considering the above factors, Defendants have not made a clear showing that the balance of interests weighs strongly in favor of transferring this case to the Middle District of Pennsylvania. While Morris may have to travel to Missouri on behalf of Tripwire on a couple of occasions, all other preparation for the limited counts left in this lawsuit can likely be completed electronically and for relatively low cost. Accordingly, the Court gives deference to Plaintiffs' choice of forum, particularly because Nichols lives in this district and DiVirgilio has consented to be here. Defendants' Motion to Transfer Venue is denied.[2]

### III. Conclusion

---

[2] While the Court recognizes that a separate suit may have to be filed elsewhere to address the dispute about the purchase agreements, those claims are legally independent from the remaining claims here against Tripwire.

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. All claims against Morris are dismissed for lack of personal jurisdiction. The claims against Tripwire in Counts I-IV are dismissed for failure to state a claim. Defendants' Motion to Transfer Venue is denied.

                                               s/ Nanette K. Laughrey
                                               NANETTE K. LAUGHREY
                                               United States District Judge

Dated: February 26, 2015
Jefferson City, Missouri